IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CHRISTOPHER ODOM, ) | Civil Action No. 3:07-343-PMD-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JON OZMINT, DIRECTOR; ) | |
| MARY BROWN, CLERK; ) | |
| KERRIE SPECHT, PAROLE OFFICER; ) | |
| RALPH HUNTER, D.H.O.; ) | |
| MR. STEVEN, CASE WORKER; ) | |
| MRS. LAVERETTE; AND ) | |
| MR. HALLMAN, ) | |
| ) **REPORT AND RECOMMENDATION** | |
| Defendants. ) | |
| ) | |

This action was filed by the pro se Plaintiff, pursuant to 42 U.S.C. § 1983, on February 2, 2007.[1] Defendants are Jon Ozmint ("Ozmint"), Mary Brown" ("Brown"), Kerrie Specht ("Specht"), Ralph Hunter ("Hunter"), Mr. Steven ("Steven"), Mrs. Laverette ("Laverette"), and Mr. Hallman ("Hallman"). On October 25, 2007, Defendants filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on October 30, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff did not respond to the Roseboro order. On January 3, 2008, the undersigned issued an order allowing Plaintiff an additional fifteen days in which to advise the Court whether he wished to continue to prosecute this action. On January 23, 2008, Plaintiff filed a response.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d) and (e), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

DISCUSSION

On August 5, 1998, Plaintiff was convicted on a charge of Shoplifting, 2nd, in the Court of General Sessions for Charleston County. He was sentenced to nine years incarceration within the South Carolina Department of Corrections ("SCDC"). He was granted parole in April 2001. Plaintiff violated the terms and conditions of his parole, his parole was revoked, and he was re-incarcerated within the SCDC in September 2004 to serve the remainder of his original sentence. He was released from incarceration on August 1, 2006, upon the expiration of his sentence.

Plaintiff alleges that Defendants wrongfully detained him within SCDC past his scheduled release date. He claims that he was subjected to cruel and unusual punishment and denied due process. Plaintiff requests punitive damages. Complaint at 2, 3, and 5.

Defendants contend that their motion for summary judgment should be granted because: (1) Defendants Brown and Specht are not proper parties to this action; (2) Defendants are entitled to Eleventh Amendment immunity; (3) Defendant Ozmint cannot be held liable on a theory of respondeat superior; (4) Defendants are entitled to qualified immunity; (5) Plaintiff failed to exhaust his available administrative remedies;[2] (6) Plaintiff fails to establish any basis for an award of punitive damages; and (7) to the extent that Plaintiff's complaint is construed to allege a cause of

---

[2] Plaintiff brought this suit after he was released such that he was no longer "a **prisoner** confined in any jail, prison, or other correctional facility." See 42 U.S.C. § 1997e(a)(emphasis added); Kerr v. Puckett, 138 F.3d 321, 323 (7th Cir. 1998)("The statutory language does not leave wiggle room; a convict out on parole is not 'a person incarcerated or detained in any facility....'"). The exhaustion-of-remedies requirement of the Prison Litigation Reform Act does not apply to a litigant who files his or her § 1983 action after being released from prison. See Wilson v. Hampton County, No. 9:05-1777PMD, 2005 WL 2877725 (D.S.C. Oct. 31, 2005). Plaintiff's § 1983 claims are, therefore, not barred by any failure to exhaust administrative remedies.

2

action under South Carolina law, SCDC has immunity pursuant to the South Carolina Tort Claims Act ("SCTCA").

    1.    <u>Eleventh Amendment Immunity</u>

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. <u>Id.</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Here, Defendants are all

employees of the State of South Carolina or its subdivisions. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

  2. <u>Qualified Immunity</u>

Defendants contend that they are entitled to qualified immunity. Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The analysis of the defense of qualified immunity is examined using a two-step analysis. <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). The first step is to determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendants' conduct violated a constitutional right. <u>Id.</u> at 201. If the facts, so viewed, do not establish a violation of a constitutional right, the plaintiff cannot prevail, and "there is no necessity for further inquiries concerning qualified immunity." <u>Id.</u> If, however, a favorable view of the facts does establish such a violation, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. <u>Id.</u> If the right was not clearly established, the defendants are entitled to qualified immunity. <u>Id.</u>

Here, Plaintiff fails, in the light most favorable to him, to show that Defendants' conduct violated any of his constitutional rights, as discussed further below. Thus, Defendants are entitled to qualified immunity from monetary damages.

  a. <u>Hunter</u>

It is unclear, but Plaintiff may be asserting that Hunter erred in calculating his good-time credits, resulting in a later release date. Hunter states that he never had any duties or

4

responsibilities regarding the calculation of any sentence max-out date for Plaintiff. Hunter Aff., Para. 6. Hunter served as the Disciplinary Hearing Officer in several disciplinary matters involving Plaintiff. Hunter has provided information concerning these hearings, a number of which resulted in Plaintiff losing good-time credits. Hunter Aff., Attachments. Hunter states that he is aware that a conviction for a disciplinary offense which resulted in a loss of good-time credits would affect Plaintiff's max-out date. Hunter Aff., Para. 6. Plaintiff has not provided anything to show that Hunter was responsible for calculating Plaintiff's sentence or max-out date. He fails to show that Hunter had a duty to him or that Hunter breached any of his constitutional rights.

Further, to the extent that Plaintiff's allegations concern his disciplinary proceedings and the outcome of those proceedings, his claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994)[3] and Edwards v. Balisok, 520 U.S. 641 (1997)(Heck precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits); see also Kerr v. Orellana, 969 F. Supp. 357 (E.D.Va. 1997)(holding that prisoner's § 1983 claim for monetary damages and injunctive relief related to his disciplinary hearing was precluded under Heck). Plaintiff has not shown he successfully attacked any disciplinary hearing conviction. Plaintiff cannot maintain a § 1983 action, whether for restoration of good time credits, monetary damages, or injunctive relief related to the hearing, if a judgment in his favor would necessarily imply the invalidity of the outcome of the disciplinary proceeding. Here, to the extent that the awarding of damages to Plaintiff would

---

[3] The Supreme Court, in Heck v. Humphrey, 512 U.S. 477 (1994) determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based.

necessarily imply the invalidity of the outcome of his disciplinary hearing, his claim is barred under Heck and Balisok.

   b.  Brown

Plaintiff appears to allege that Brown violated his due process rights because she failed to appoint him an attorney or grant him the right to a PCR hearing to "correct Ralph Hunter['s] error." Complaint at 3 and Plaintiff's Response to Defendants' Motion for Summary Judgment. Brown is the Clerk of Court for Berkeley County, South Carolina. She states that she has never had any duties or responsibilities regarding the calculation of any sentence of incarceration or max-out date for any inmate of SCDC. Brown Aff., Paras. 1-4. Plaintiff fails to show that Brown had any duty regarding the calculation of Plaintiff's sentence or max-out date. He appears to assert that his due process rights were violated as to his disciplinary hearing, but fails to show that the Brown had any duty to provide an attorney or a PCR hearing as to a prison disciplinary hearing. Further, such claims are barred by Heck, as discussed above. Thus, Plaintiff fails to show that Defendant Brown violated any of his constitutional rights.

   c.  Specht

Plaintiff appears to allege that Defendant Specht provided an incorrect release date and service credits on Plaintiff's parole certificate. Specht states that she is employed by the South Carolina Department of Probation, Parole, and Pardon Services as a Probation/Parole Agent. She states that she never had any duties or responsibilities regarding the calculation of any sentence of incarceration or any sentence max-out date for Plaintiff. Specht supervised Plaintiff while he was on parole and a warrant was issued after he violated parole. She states that the issuance of the warrant stopped any time Plaintiff had remaining on parole. Specht Aff., Paras. 1, 2, 5, and 6.

Plaintiff has not provided a copy of the parole certificate which he claims contained incorrect information and has not provided any information to show that his release date and service credit were incorrect. He fails to show that Specht had any duty regarding the calculation of his sentence or max-out date. Thus, Plaintiff fails to show that Defendant Specht violated any of his constitutional rights.

                d.      Ozmint, Steven Laverette, and Hallman

Plaintiff appears to allege that Defendants Ozmint, Steven, Laverette, and Hallman violated his constitutional rights because he asked them about, filed grievances, and/or wrote letters to them in which he expressed that his sentence expiration date had been incorrectly calculated. These Defendants contend that Plaintiff fails to show that they violated any of his constitutional rights because Plaintiff fails to show that these Defendants had any duties or responsibilities with regard to determining Plaintiff's sentence or max-out date.

Mary Coleman, the Branch Chief of Inmate Grievances with SCDC, states that she has reviewed the SCDC inmate grievance records concerning Plaintiff. She states that while Plaintiff was an inmate of SCDC, he attempted to file several grievances in which he claimed that he was being held past his max-out date, but that these grievances were either denied or returned because Plaintiff failed to follow proper procedures with regard to the processing of the grievances or refused to sign the responses. Coleman Aff., Paras. 1, 3, and 4. Review of these grievances (attached to Coleman's Affidavit) reveals that Plaintiff filed a grievance on May 11, 2006 in which he merely stated that his nine year sentence expired on February 20, 2005 (or prior to that date). An SCDC employee responded that Plaintiff's max-out date of August 24, 2006, was correct. Inmate Grievance Application Inquiry printouts attached to Coleman's affidavit indicate that Plaintiff had

a projected max-out date of August 24, 2006. Plaintiff has not presented anything to show that his sentence or max-out date were incorrectly calculated. He fails to show that Defendants Ozmint, Steven, Laverette, or Hallman had any duty regarding the calculation of his sentence or max-out date. Thus, Plaintiff fails to show that Defendants Ozmint, Steve, Laverette, or Hallman violated any of his constitutional rights.[4]

       3.      <u>Respondeat Superior</u>

Defendant Ozmint contends that he cannot be held liable on a theory of vicarious liability or respondeat superior. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. <u>See</u> <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978); <u>Fisher v. Washington Metro Area Transit Authority</u>, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. <u>Slakan v. Porter</u>, 737 F.2d 368 (4th Cir. 1984), <u>cert. denied</u>, <u>Reed v. Slakan</u>, 470 U.S. 1035 (1985).

---

[4]Further, to the extent that Plaintiff is attempting to establish a constitutional claim concerning the grievance system at SCDC, his claim fails. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994). Even assuming that Defendants violated SCDC grievance procedures, such actions do not state a claim which is actionable under § 1983. <u>See</u> <u>Brown v. Dodson</u>, 863 F. Supp. 284 (W.D.Va. 1994). Further, allegations that Defendants did not follow SCDC policies or procedures, standing alone, do not amount to constitutional violations. <u>See</u> <u>United States v. Caceres</u>, 440 U.S. 741 (1978); <u>see also</u> <u>Riccio v. County of Fairfax, Virginia</u>, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); <u>Keeler v. Pea</u>, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

Plaintiff has not alleged that Defendant Ozmint was personally responsible for any of the alleged incidents. Further, Plaintiff has not shown that Ozmint deliberately indifferent to, or tacitly authorized, any of the alleged actions or inactions. Plaintiff appears to claim that Ozmint should be held liable because he failed to respond to Plaintiff's notices/grievance of sentence expiration. He has, however, presented no materials to show that these grievances were brought to Ozmint's attention. Thus, Plaintiff fails to show that Ozmint is liable on a theory of respondeat superior or supervisory liability.

4. <u>State Law Claims</u>

Defendants contend that any state law claims asserted by Plaintiff are barred by the provisions of the SCTCA. It does not appear that Plaintiff has alleged any claims pursuant to South Carolina law. To the extent, however, that he has alleged any claims under South Carolina law, it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed as Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above).

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 38) be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

August 4, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).